# EXHIBIT A

Electronically Filed - CITY OF ST. LOUIS - November 03, 2023 - 03:34 PM

**IN THE CIRCUIT COURT OF SAINT LOUIS CITY**
**STATE OF MISSOURI**
**TWENTY-SECOND JUDICIAL CIRCUIT**

| | |
|---|---|
| THOMAS HAYDEN, and his wife<br>WANDA LEE HAYDEN<br><br>    Plaintiffs,<br><br>v.<br><br>MONSANTO COMPANY,<br><br>EASTMAN CHEMICAL COMPANY, Individually<br>and as successor to Solutia Inc.<br>*Serve*:  United Agent Group, Inc.<br>   12747 Olive Blvd., #300<br>   St. Louis, MO  63141<br><br>PHARMACIA LLC<br>*Serve*:  CT Corporation System<br>   120 S. Central Ave.<br>   Clayton, MO  63105<br><br>SHELL USA, INC., Individually and as successor to<br>Shell Oil Company, Incorporated, Shell Chemical LP<br>(f/k/a Shell Chemical Company), and Shell Oil<br>Products Company, LLC<br>*Serve*:  CT Corporation System<br>   120 S. Central Ave<br>   Clayton, MO 63105<br><br>SOLUTIA INC.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)  Case No.:2322-CC09433<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **FIRST AMENDED PETITION**

COME NOW Thomas Hayden (hereinafter, "Mr. Hayden") and his wife, Wanda Lee

Hayden (hereinafter, "Mrs. Hayden") (collectively, hereinafter, "Plaintiffs"), by and through

Electronically Filed - CITY OF ST. LOUIS - November 03, 2023 - 03:34 PM

undersigned counsel, and for their First Amended Petition and cause of action against Defendants, state as follows:

<u>**JURISDICTION AND VENUE**</u>

1. Mr. Hayden was a resident and citizen of the State of Missouri at all times of his exposure to benzene described in this First Amended Petition.  Both Mr. & Mrs. Hayden are currently living in Nampa, Idaho.

2. At all times relevant herein, Mr. Hayden and Mrs. Hayden have been validly married to each other.

3. Defendant MONSANTO COMPANY (hereinafter, "Monsanto") is a foreign corporation, incorporated in the State of Delaware, and with its principal place of business within the State of Missouri.

4. Defendant EASTMAN CHEMCIAL COMPANY, Individually and as successor to Solutia Inc. (hereinafter, "Eastman Chemical"), is a foreign corporation doing business within the State of Missouri.

5. Defendant PHARMACIA, LLC (hereinafter, "Pharmacia") is a foreign corporation doing business within the State of Missouri.

6. Defendant SHELL USA, INC., Individually and as successor to Shell Oil Company, Incorporated, Shell Chemical LP (f/k/a Shell Chemical Company), and Shell Oil Products Company, LLC (hereinafter "Shell") is a Delaware Corporation, in good standing and doing business in the State of Missouri.

7. Defendant SOLUTIA INC., Individually and as successor to Monsanto Company (hereinafter, "Solutia"), is foreign corporation with its United States headquarters located within the State of Missouri.

Electronically Filed - CITY OF ST. LOUIS - November 03, 2023 - 03:34 PM

8. The forgoing individual Defendants, set forth in Paragraphs 3 through 7, will be collectively referred to as "Defendants" throughout Plaintiffs' First Amended Petition.

9. Defendants Monsanto Company, Eastman Chemical Company, Pharmacia, LLC, and Solutia, Inc. will be collectively referred to as "Monsanto."

10. All Defendants are entities that may have caused, or contributed to cause, Mr. Hayden's Acute Myeloid Leukemia from benzene exposure through their products, facilities or operations within the State of Missouri or are parent companies, affiliates, subsidiaries, successors in interest, employees, contractors, sub-contractors or other agents of the named Defendants, or their respective predecessors in interest.

11. The nonresident Defendants in this action are subject to the jurisdiction of this Court pursuant to RSMo. § 506.500 (1) and (3) because the causes of action stated in this First Amended Petition arose out of their transaction of business in Missouri and out of torts committed in Missouri by the nonresident Defendants

12. Venue is proper in the City of St. Louis, Missouri because Mr. Hayden was first injured by the wrongful acts and/or negligent conduct alleged in this action in the City of St. Louis. Accordingly, venue is proper pursuant to RSMo. § 508.010.

13. THIS CAUSE IS NOT REMOVABLE. There is no diversity of citizenship among the parties because Defendant Solutia, Inc., and Monsanto Company., are citizens of the State of Missouri for purposes of federal diversity jurisdiction and removal statutes. *See* 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business..."); *GMAC Commercial Credit LLC v. Dillard Dep't Stores, Inc.*, 357 F.3d 827, 829 (8th Cir. 2004) ("an LLC's citizenship for purposes of diversity jurisdiction is the citizenship of its members").

Electronically Filed - CITY OF ST. LOUIS - November 03, 2023 - 03:34 PM

Moreover, because at least one Defendant is a resident of Missouri, where this action is filed, Defendants could not, in any event, remove this action on the basis of diversity. 28 U.S.C. § 1441(b). Plaintiffs affirmatively disclaim any damages or action arising under the constitution, treaties, or laws of the United States, including any claims for exposure to polychlorinated biphenyls a/k/a PCBs and/or dioxin or agent orange manufactured by Monsanto, including any claim arising from an act or omission on a federal enclave, or of any officer of the U.S. or any agency or person acting under him occurring under color of such office. No claim of admiralty or maritime law is raised. Plaintiffs sue no foreign state or agency. The damages that are sought by the Plaintiffs, exclusive of interest and costs, exceed the minimum jurisdictional limits of this Court.

## ALLEGATIONS COMMON TO ALL COUNTS

### I. Plaintiff Thomas Hayden's Exposure Routes

14. Mr. Hayden was born on September 23, 1943, and lived at 4450 South Compton, within the City of St. Louis, Missouri, and he resided there until he was twenty-two years of age. Mr. Hayden resided within the State of Missouri at all times when he was exposed to Defendants benzene and benzene containing products as described elsewhere in this First Amended Petition and he was first exposed to Defendants' benzene within the City of St. Louis, Missouri.

15. Mr. Hayden was exposed to benzene and products containing benzene when he worked from 1966 to 1989 for Manufacturers Railway Company and went onto the premises of Monsanto's J.F. Queeny Plant (hereinafter "Queeny Plant") located within the City of St. Louis Missouri.

Electronically Filed - CITY OF ST. LOUIS - November 03, 2023 - 03:34 PM

16. From approximately 1966 through 1989, Mr. Hayden, while working for Manufacturer's Railway, worked for substantial periods of time at Monsanto's Queeny Plant and moved various rail cars around the rail yard within the Monsanto Queeny Plant.  While working at Monsanto facilities, Mr. Hayden was exposed to benzene fumes and had dermal contact with benzene. Monsanto's rail yard had overhead pipelines, some of which contained benzene and/or products containing benzene, which were dripping the contents onto Mr. Hayden. There was also liquid containing benzene on the ground which had come from the leaking pipelines that were present in the train loading area of the Queeny Plant. Mr. Hayden did not have any control over the leaking pipelines or the chemicals from the pipeline on the ground because his job was to move the railcars around the train loading and unloading area of the Queeny Plant. Mr. Hayden was also exposed to chemicals, including benzene and products containing benzene, when he had to move chemical cars at the Queeny Plants train yard that Monsanto employees had failed to properly seal.  The chemicals in the rail cars would splash into the air and onto the ground during their movement and Mr. Hayden would have to ask the Monsanto employees to properly close or secure the chemical railcars.  Mr. Hayden was not provided with any personal protective equipment when working at the Queeny plant and was subjected to the negligence of Monsanto.

17. While working at Monsanto Queeny Plant, Mr. Hayden was exposed to benzene that was, upon information and belief, in part, manufactured, sold, and shipped to Monsanto from Defendant Shell. Other benzene, and products containing benzene, were produced, and manufactured by Monsanto.

Electronically Filed - CITY OF ST. LOUIS - November 03, 2023 - 03:34 PM

18. On or about May 30, 2022, Mr. Hayden was diagnosed with Acute Myeloid Leukemia

    (hereinafter "AML" or "Acute Myeloid Leukemia") as a result of his exposure to benzene at

    Monsanto's Queeny Plant

### FACTS CONCERNING MONSANTO

19. From 1901 to 1997 the original Monsanto Co., also known as Monsanto Chemical Co.,

    operated as a Missouri corporation manufacturing a variety of chemicals and agricultural

    products. This original corporate Monsanto entity, which is now sometimes referred to as

    "Old Monsanto," ceased to exist in 1997 as the result of a series of corporate spin-offs and

    acquisitions. At that time, Old Monsanto's chemical division was split off and reformed into

    a newly independent corporation, which was renamed "Solutia, Inc." one of the Defendants

    in this action. As part of this 1997 spin-off, Solutia assumed certain of Old Monsanto's debts

    and liabilities, including all liabilities related to Old Monsanto's chemical exposures

    including benzene.  Solutia subsequently was reorganized pursuant to Chapter 11 of the

    federal bankruptcy laws, and it emerged from bankruptcy in February 2008. As part of

    Solutia's federal bankruptcy plan of reorganization, "New Monsanto," discussed below,

    agreed to indemnify Solutia for all tort "legacy liabilities" related to Old Monsanto's

    activities, including injuries related to chemical exposure.

20. In 2000, the remaining portion of Old Monsanto, comprised of Old Monsanto's Life Sciences

    division, merged with Pharmacia/Upjohn Corp., which meant that Old Monsanto no longer

    existed as a separate corporate entity. Defendant Pharmacia then incorporated a new

    company in Delaware, also called "Monsanto Co.," which was then referred to as "New

    Monsanto," one of the other Defendant in this case. In 2002, Defendant Pharmacia spun off

Electronically Filed - CITY OF ST. LOUIS - November 03, 2023 - 03:34 PM

its interest in New Monsanto, and New Monsanto then operated as an independent corporate entity with its corporate headquarters and principal place of business in St. Louis, Missouri.

21. In 2003, Defendant Pharmacia (what remained of "Old Monsanto") was acquired by Pfizer, Inc.

22. In 2012, Pharmacia merged with another Pfizer subsidiary, called Pfizer Convention III, LLC. The surviving corporation was renamed Pharmacia LLC.

23. Defendants Pharmacia, Solutia and Monsanto collectively have legal responsibility for Old Monsanto's conduct in causing, or contributing to cause, Mr. Hayden's Acute Myeloid Leukemia.

**COUNT I**
**NEGLIGENCE:  PREMISES LIABILITY**
**(AGAINST DEFENDANTS MONSANTO, SOLUTIA,**
**PHARMACIA, AND EASTMAN CHEMICAL)**

COMES NOW Plaintiffs by their attorneys, The Dysart Law Firm, P.C., and for their cause of action against Defendants Monsanto, Solutia, Pharmacia, and Eastman Chemical (hereinafter "Monsanto") and states:

24. Plaintiffs incorporate by reference paragraphs 1 through 23 of this First Amended Petition as if fully set forth herein.

25. Mr. Hayden was an invitee and was lawfully present as a railroad worker at Monsanto's Queeny Plant at various times from 1966 through 1989.

26. During the 1966 to 1989 time period, and while Mr. Hayden was an invitee and lawfully present as an invitee at Monsanto's J.F. Queeny Plant (hereinafter referred to as the "Queeny plant").  Monsanto owned, managed, and/or operated the Queeny Plant.

27. During the time periods described in this First Amended Petition, and while Mr. Hayden was an invitee at Monsanto's Queeny Plant, Mr. Hayden was caused to enter those portions of the

Electronically Filed - CITY OF ST. LOUIS - November 03, 2023 - 03:34 PM

Monsanto properties and facilities where he came into contact with a dangerous condition of the premises, namely benzene and benzene-containing products and materials that had leaked, spilled, and were otherwise released into the environment and atmosphere and onto the body of Mr. Hayden by Monsanto's negligence.

28. At all relevant times, Mr. Hayden was lawfully present at/on Monsanto's Queeny Plant at the invitation or direction of Monsanto.

29. While present at Monsanto's facilities, Mr. Hayden was exposed to benzene and benzene-containing materials, products, and processes, resulting in Mr. Hayden's inhalation and dermal contact thereof.

30. Monsanto had control of, and was aware of, or through the exercise of ordinary care should have been aware of, the fact that it had failed to secure and close the chemical containing compartments of rail cars that Mr. Hayden was working with and around. Monsanto also had control of, and was aware of, or through the exercise of ordinary care should have been aware of, leaking pipelines that carried chemicals, including benzene and products containing benzene, into and out of rail cars in its rail yard from the other parts of the Queeny Plant. Monsanto had control of, and was aware of, or in the exercise of ordinary care should have been aware of, chemicals, including benzene, and products containing benzene, which had been deposited onto the ground and in the atmosphere of the Queeny Plant rail yard where Mr. Hayden was required to work.

31. Mr. Hayden was unaware and had no reasonable way to know how inhalation and dermal contact with benzene and benzene-containing products could cause or contribute to cause him to develop AML.

Electronically Filed - CITY OF ST. LOUIS - November 03, 2023 - 03:34 PM

32. Monsanto, as a producer and user of benzene and products containing benzene knew, or should have known that benzene, and products containing benzene could cause, or contribute to cause, invitees lawfully on its premises to contract AML.

33. Monsanto had a duty to use reasonable and ordinary care to ensure that its premises at which Mr. Hayden was lawfully present were in a reasonably safe condition for use by Mr. Hayden and others.

34. Monsanto breached its duties to Mr. Hayden, and was negligent in one or more of the following respects:

    a. Failed to secure the chemical containing compartments of its chemical rail cars before allowing them to be moved by, or come into contact with, Mr. Hayden;

    b. Failed to prevent its pipelines containing chemicals, including benzene and products containing benzene, from leaking or spilling their contents onto, or in the vicinity of, Mr. Hayden;

    c. Failed to warn Mr. Hayden that inhalation or dermal contact with benzene and/or benzene containing products/materials, on its premises could cause, or contribute to cause cancer, including AML if proper precautions were not taken;

    d. Failed to require and/or advise Mr. Hayden and others to use equipment and practices designed to prevent or reduce inhalation or absorption of benzene;

    e. Failed to utilize equipment and controls designed to prevent or reduce the levels of benzene at Monsanto's premises, including its rail yard;

    f. Failed to monitor levels of benzene at its rail yard, including the areas in which Mr. Hayden was working, so Monsanto could provide reasonable warnings to Mr. Hayden to avoid exposure, or wear the proper equipment and clothing to prevent exposure, or use the proper tools and procedures to prevent inhalation of, and/or dermal contact with, benzene; and

    g. Failed to clean up, or remove, benzene, or chemicals containing benzene, from the ground, switch plates and other areas of its Queeny Plant rail yard.

Electronically Filed - CITY OF ST. LOUIS - November 03, 2023 - 03:34 PM

35. That as a direct and proximate result of the carelessness and negligence of Monsanto, Mr. Hayden was caused to be exposed to, inhaled, ingested, and/or otherwise absorbed benzene, thereby causing, or contributing to cause, Mr. Hayden to develop Acute Myeloid Leukemia.

36. That as a direct and proximate result of the carelessness and negligence of Monsanto, Mr. Hayden was caused to be exposed to, inhaled, ingested, and/or otherwise absorbed benzene, thereby causing, or contributing to cause, Mr. Hayden to incur medical bills, pain and suffering and a shortened life expectancy.

WHEREFORE, Plaintiff, Thomas Hayden, prays this Court to enter judgment in his favor and against Defendants Monsanto, Solutia, Pharmacia, and Eastman Chemical individually and jointly and severally with any other Defendant, to award compensatory damages in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000), costs incurred in prosecuting this matter, and to grant such other and further relief as this Court deems just and proper.

**COUNT II**
**NEGLIGENCE**
**(AGAINST DEFENDANTS MONSANTO, SOLUTIA,**
**PHARMACIA, AND EASTMAN CHEMICAL)**

COMES NOW Plaintiffs, by their attorneys, The Dysart Law Firm, P.C., and for their cause of action against Defendants Monsanto, Solutia, Pharmacia, and Eastman Chemical (hereinafter "Monsanto") and states:

37. Plaintiffs incorporate by reference paragraphs 1 through 23 of this First Amended Petition as if fully set forth herein.

38. Mr. Hayden was an employee of the Manufacturers Railway Company (hereinafter "Railroad") that went onto the J.F. Queeny Plant (hereinafter referred to as the "Queeny plant"), located in the City of St. Louis, Missouri at various times from 1966 through 1989.

Electronically Filed - CITY OF ST. LOUIS - November 03, 2023 - 03:34 PM

39. During these time periods described in this First Amended Petition, and while Mr. Hayden worked for the Railroad at the Queeny Plant, Monsanto owned, managed, and/or operated the Queeny plant.

40. From 1966 through 1989, while working for the Railroad at the Queeny plant, Mr. Hayden was exposed to benzene and benzene-containing products which Monsanto had manufactured, stored, transported, leaked and spilled in and around its rail loading facility at the Queeny Plant from the 1930s through the 1980s. Monsanto's benzene and benzene containing products were transported via rail car, by pipeline, and were present in and on ground, and were stored in various containers at the facility leading to Mr. Hayden being exposed to these toxic substances when he neared, entered, worked and traveled within the Queeny Plant.

41. While present and working at Monsanto's Queeny Plant, Mr. Hayden was exposed to benzene and benzene-containing materials through inhalation and dermal contact when he entered the facility, and worked in Monsanto's rail yard, moved various chemical cars at the rail yard, worked underneath leaking pipelines containing benzene and products containing benzene, and was exposed to benzene and benzene containing products that had been spilled and leaked onto the ground and soil from pipelines, rail cars and various storage tanks and buildings that contained benzene and benzene containing products.

42. Mr. Hayden's job for the Railroad did not require him to clean up or remove benzene or benzene containing products. Instead, Mr. Hayden's job as a railroad worker required him to move rail cars in and around Monsanto's Queeny Plant.

43. When Mr. Hayden worked for the Railroad at the Queeny plant, Monsanto had the duty, and was required, to make sure its chemical cars were properly sealed and would not spill or leak

Electronically Filed - CITY OF ST. LOUIS - November 03, 2023 - 03:34 PM

benzene, and products containing benzene, and would not emit chemical fumes. Monsanto was also required to make sure that its pipelines, going to and from the chemical cars, did not spill or leak benzene, or products containing benzene, and did not emit benzene fumes.

44. When Mr. Hayden worked for the Railroad, Monsanto had the duty, and was required to ensure that its rail yards, including the soil, ground, and air around the rail yards where Mr. Hayden worked, were kept in a safe condition, including keeping them free from the presence of toxic chemicals, including benzene and benzene containing products.

45. When Mr. Hayden entered the Queeny plant, Monsanto had the duty to prevent its manufacturing, storage, transportation, leaking, and/or spilling of benzene and products containing benzene from coming into contact with Mr. Hayden through the air, soil, ground, pipes, and buildings. Monsanto had both the ability and the duty to prevent these materials from coming into contact with Mr. Hayden but failed to do so.

46. Mr. Hayden did not have the ability or the right to control the sealing of Monsanto's rail cars, and he did not have the ability or the duty to prevent the pipelines going to and from the rail cars from leaking or spilling benzene, or products containing benzene. Mr. Hayden also did not have the ability or the duty to control whether benzene or products containing benzene were present at the rail yard or in the air, ground and soil, buildings, or pipelines in and around the Monsanto's Facilities.  Monsanto did have the ability and the duty to control all of these things but failed to do so.

47. Mr. Hayden was unaware and had no reasonable way to know how inhalation and dermal contact with benzene and benzene-containing products could cause, or contribute to cause, him to develop AML. Monsanto knew or should have known that the inhalation of, or dermal

Electronically Filed - CITY OF ST. LOUIS - November 03, 2023 - 03:34 PM

contact with, benzene and/or products containing benzene could cause or contribute to cause Mr. Hayden to develop AML.

48. Monsanto, as a manufacturer, producer, seller, and user of these chemicals knew, or should have known that benzene and products containing benzene could cause, or contribute to cause, Mr. Hayden to contract AML.

49. Monsanto breached its duties to Mr. Hayden, and was negligent in one or more of the following respects:

    a. Manufactured, stored, transported, leaked, and spilled, benzene and benzene-containing products/materials, in the vicinity of Mr. Hayden or into the areas where Mr. Hayden worked at its Queeny plant;

    b. Failed to properly maintain, fix, or prevent its pipelines in the rail yard at its Queeny plants from leaking or spilling benzene liquid and/or fumes;

    c. Failed to properly maintain, close or seal its rail cars at its Queeny plant to prevent them from leaking or spilling benzene, or products containing benzene.

    d. Failed to warn Mr. Hayden that inhalation or dermal contact with benzene and/or benzene containing products/materials could cause, or contribute to cause cancer, including AML;

    e. Failed to require and/or advise Mr. Hayden to use personal protective equipment, or other measures and practices designed to prevent or reduce inhalation or absorption of benzene or benzene containing materials;

    f. Failed to clean up benzene and/or products containing benzene, that it had manufactured, stored, transported, leaked, spilled, and emitted at its Queeny plant even though Monsanto knew that these chemicals were dangerous and could cause, or contribute to cause, cancer, including AML; and

    g. Failed to monitor the levels of benzene in and around its rail yard, including the areas in which Mr. Hayden worked, traveled, or was otherwise present, so Monsanto could clean up or remove benzene, or products containing benzene, could provide reasonable warnings to Mr. Hayden  to avoid exposure, or provide him with  proper personal protective equipment and clothing to prevent exposure, or use the proper tools and procedures to prevent inhalation and dermal contact with benzene and/or products containing benzene.

Electronically Filed - CITY OF ST. LOUIS - November 03, 2023 - 03:34 PM

50. That as a direct and proximate result of the carelessness and negligence of Monsanto, Mr. Hayden was caused to be exposed to, inhaled, ingested, and/or otherwise absorbed benzene, and/or products containing benzene, thereby causing, or contributing to cause, Mr. Hayden to develop Acute Myeloid Leukemia.

51. That as a direct and proximate result of the carelessness and negligence of Monsanto, Mr. Hayden was caused to be exposed to, inhaled, ingested, and/or otherwise absorbed benzene, and/or products containing benzene, thereby causing, or contributing to cause, Mr. Hayden to incur medical bills, loss of income, pain and suffering and a shortened life expectancy.

WHEREFORE, Plaintiff, Thomas Hayden, prays this Court to enter judgment in his favor and against Defendants Monsanto, Solutia, Pharmacia, and Eastman Chemical individually and jointly and severally with any other Defendant, to award compensatory damages in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000), costs incurred in prosecuting this matter, and to grant such other and further relief as this Court deems just and proper.

### COUNT III
### <u>NEGLIGENCE AS TO PRODUCER,</u>
### <u>MANUFACTURER & DISTRIBUTER OF BENZENE</u>
### (SHELL USA, Inc.)

COMES NOW the Plaintiffs, by through their attorneys, The Dysart Law Firm, P.C. and for their cause of action against the Defendant Shell USA, Inc, a/k/a Shell Oil Company, Shell Chemical LP (f/k/a Shell Chemical Company), and Shell Oil Products Company, LLC (hereinafter "Shell"), states as follows:

52. Plaintiffs incorporate by reference all paragraphs of this First Amended Petition as if fully set forth herein.

Electronically Filed - CITY OF ST. LOUIS - November 03, 2023 - 03:34 PM

53. Defendants Monsanto, Solutia, Pharmacia, and Eastman Chemical will be collectively referred to in this Count as "Monsanto."

54. At times material to this First Amended Petition, Shell manufactured, produced, sold, and distributed benzene, and products containing benzene, to, on information and belief, Monsanto for profit.

55. At all times herein set forth, Defendant Shell's benzene, materials and/or products sold to Monsanto were being employed in the manner and for the purposes for which they were intended.

56. By selling benzene, and products containing benzene, for profit to Monsanto for use on Monsanto's premises and for use in Monsanto's products, Plaintiff's exposure to, and inhalation, ingestion or absorption benzene through inhalation and dermal exposure, as a railroad worker present at Monsanto's J.F. Queeny Plant (hereinafter referred to as the "Queeny plant"), was completely foreseeable and could or should have been anticipated by Shell.

57. Defendant Shell knew, or should have known, that its benzene or products containing benzene, had a toxic, poisonous, highly deleterious effect, including causing or contributing to cause cancer, for persons inhaling, ingesting, or touching it or otherwise absorbing it.

58. At all times herein relevant, Defendant Shell had a duty to exercise reasonable care and caution for the safety of Mr. Hayden and others working with and around its benzene and/or benzene –containing materials and/or products.

59. Defendant Shell failed to exercise ordinary care and caution for the safety of Mr. Hayden in one or more of the following respects:

    a. Manufactured, sold, and transported benzene to Monsanto, and included benzene in their materials and/or products sold to Monsanto, even though it was completely

Electronically Filed - CITY OF ST. LOUIS - November 03, 2023 - 03:34 PM

foreseeable and could or should have been anticipated that persons such as the Plaintiff working with or around Monsanto's rail yard which contained chemical cars, including cars containing Shell's benzene would inhale, ingest, touch, or otherwise absorb benzene;

b. Manufactured and sold benzene, and included benzene in their materials and/or products, when Shell knew, or should have known, that said benzene would have a toxic, poisonous and highly deleterious effect upon the health of persons inhaling, ingesting, touching or otherwise absorbing it;

c. Failed to provide any or adequate warnings to persons working with and around their benzene, materials and/or products of the dangers of inhaling, ingesting, touching or otherwise absorbing benzene;

d. Failed to provide any, or adequate, instructions concerning the safe methods of working with and around the benzene, materials and/or products, including specific instructions on how to avoid inhaling, ingesting or otherwise absorbing benzene; and

e. Failed to conduct tests on said benzene, materials and/or products to determine the hazards to which persons such as the Plaintiff might be exposed while working with and around the same.

f. Covered up and hid the dangers of benzene, including the cancer-causing properties of benzene, including low level benzene exposure, and that benzene could cause, or contribute to cause, Acute Myeloid Leukemia.

60. That as a direct and proximate result of Shell's failure to warn Mr. Hayden about the unreasonably dangerous condition of Defendant's benzene, materials and/or products, Plaintiff was exposed to and inhaled, ingested or otherwise absorbed benzene in sufficient amounts to cause, or contribute to cause disease and/or other harm and to cause, or contribute to cause, his cancer.

61. As a direct and proximate result of said exposure, inhalation, ingestion and/or absorption, Plaintiff developed Acute Myeloid Leukemia; Plaintiff was compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of his benzene related disease and conditions and to alleviate the physical

Electronically Filed - CITY OF ST. LOUIS - November 03, 2023 - 03:34 PM

pain and suffering and physical disability caused by cancer; Plaintiff experienced great physical pain and suffering as a result of said exposure, inhalation, ingestion and absorption.

WHEREFORE, Plaintiff, Thomas Hayden, prays this Court to enter judgment in his favor and against Defendant Shell, to award compensatory damages in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000), and costs incurred prosecuting this matter, and to grant such other and further relief as this Court deems just and proper.

## COUNT IV
### STRICT LIABILITY – FAILURE TO WARN
### (AGAINST DEFENDANT SHELL USA, INC)

COMES NOW Plaintiffs, by their attorneys, The Dysart Law Firm, P.C., and for his cause of action against Defendant Shell USA, Inc., Shell Chemical LP (f/k/a Shell Chemical Company), and Shell Oil Products Company, LLC (hereinafter "Shell") ("hereinafter in this Count "Shell"), and states as follows:

62. Plaintiffs incorporates by reference all paragraphs of this First Amended Petition as if fully set forth herein.

63. Benzene Defendant processed, produced, manufactured, sold, distributed, utilized, and/or marketed benzene and benzene-containing products with which Mr. Hayden came into contact in the course of his employment as described in this First Amended Petition.

64. During the course of Mr. Hayden's employment at the locations described in this First Amended Petition and elsewhere, and/or in other ways, Mr. Hayden was exposed to and inhaled, ingested or otherwise absorbed benzene fumes emanating from benzene and certain benzene-containing materials and products Mr. Hayden was working with and around, which were processed, produced, manufactured, sold, distributed, marketed by the Benzene Defendant.

Electronically Filed - CITY OF ST. LOUIS - November 03, 2023 - 03:34 PM

65. At all times relevant hereto, said benzene and benzene-containing products were used in the manner and environment intended, and in a manner reasonably foreseeable and anticipated by Shell.

66. Mr. Hayden, as an individual likely to come into contact with benzene materials and/or products or be exposed to such products at his work location.

67. Shell failed to provide adequate warnings on the benzene and their benzene-containing products and/or benzene-related materials.

68. Shell covered up and hid the dangers of its benzene containing products, including the cancer-causing properties of the benzene in its products, including low level benzene exposure, and that their benzene containing products could cause or contribute to cause cancer, and/or cause or contribute to cause Acute Myeloid Leukemia.

69. That as a direct and proximate result of the unreasonably dangerous condition of Shell's benzene, or benzene containing products, being sold, and/or utilized without an adequate warning, Mr. Hayden was exposed to and inhaled, ingested or otherwise absorbed benzene in sufficient amounts to cause, or contribute to cause, AML.

70. As a direct and proximate result of said exposure, inhalation, ingestion and/or absorption, Mr. Hayden developed Acute Myeloid Leukemia.  Mr. Hayden was compelled to expend and became liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of his benzene related disease and conditions and to alleviate the pain, suffering, and physical disability caused by his injury, and a shortened life expectancy; he experienced great physical pain and as a result of said exposure, inhalation, ingestion, and absorption.  Mr. Hayden was also hindered and prevented from pursuing his normal course of

Electronically Filed - CITY OF ST. LOUIS - November 03, 2023 - 03:34 PM

employment, thereby losing large sums of money which otherwise would have accrued to him.

WHEREFORE, Plaintiffs pray this Court to enter judgment in his favor and against Defendant Shell, to award compensatory damages in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000), and costs incurred prosecuting this matter, and to grant such other and further relief as this Court deems just and proper.

**COUNT V**
**STRICT LIABILITY – DEFECTIVE PRODUCT**
**(AGAINST DEFENDANT SHELL USA, INC)**

COMES NOW Plaintiff, Mr. Hayden, by his attorneys, The Dysart Law Firm, P.C., and for his cause of action against Defendant Shell USA, Inc., Shell Chemical LP (f/k/a Shell Chemical Company), and Shell Oil Products Company, LLC (hereinafter "Shell") ("hereinafter in this Count "Shell"), and states as follows:

71. Plaintiff incorporates by reference all paragraphs of this First Amended Petition as if fully set forth herein.

72. Benzene processed, produced, manufactured, sold, distributed, and/or marketed benzene and/or benzene-containing products with which Mr. Hayden came into contact in the course of his employment.

73. At all times relevant herein, Benzene Defendant processed, produced, manufactured, sold, distributed, and marketed benzene and certain benzene-containing products to which Mr. Hayden was exposed, said products were in a defective condition and were unreasonably dangerous when put to a reasonably anticipated use in that:

a. They contained benzene, a toxin and human carcinogen;

Electronically Filed - CITY OF ST. LOUIS - November 03, 2023 - 03:34 PM

b. They were not accompanied by any adequate warnings to persons working with and around said benzene, materials and/or products of the dangers of inhaling, ingesting or otherwise absorbing benzene;

c. They were not accompanied by any adequate instructions concerning proper methods for working with and around said benzene, materials and/or products, including specific instructions on how to avoid inhaling, ingesting or otherwise absorbing benzene, and

d. They covered up and hid the dangers of their benzene containing products, including the cancer-causing properties of the benzene in its products, including low level benzene exposure, and that their benzene containing products could cause or contribute to cause cancer, and/or cause or contribute to cause Acute Myeloid Leukemia.

74. Said benzene and certain benzene-containing products reached the point of Mr. Hayden's exposure in substantially the same condition as when processed, produced, manufactured, sold, distributed, and marketed by Shell.   In other words, the unreasonably dangerous condition of the materials and products existed when the materials and products left Shell's control.

75. At all times relevant herein, said benzene and certain benzene-containing products were used in the manner and environment intended, and in a manner reasonably foreseeable and anticipated by Shell.

76. That as a direct and proximate result of the unreasonably dangerous condition of Benzene Defendant benzene and/or products, Mr. Hayden was exposed to and inhaled, ingested or otherwise absorbed benzene in sufficient amounts to cause disease and/or other harm.

77. As a direct and proximate result of said exposure, inhalation, ingestion and/or absorption, Mr. Hayden developed Acute Myeloid Leukemia.  Mr. Hayden was compelled to expend and became liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of his benzene related disease and conditions and to alleviate the

Electronically Filed - CITY OF ST. LOUIS - November 03, 2023 - 03:34 PM

pain, suffering and physical disability caused by his injury and will have a shortened life expectancy; he experienced great physical pain and suffering as a result of said exposure, inhalation, ingestion and absorption.  Mr. Hayden was also hindered and prevented from pursuing his normal course of employment, thereby losing large sums of money which otherwise would have accrued to him.

WHEREFORE, Plaintiffs pray this Court to enter judgment in his favor and against Defendant Shell, to award compensatory damages in excess of TWENTY- FIVE THOUSAND DOLLARS ($25,000), and costs incurred prosecuting this matter, and to grant such other and further relief as this Court deems just and proper.

**COUNT VI**
**NEGLIGENCE –FAILURE TO WARN**
**(AGAINST DEFENDANT SHELL USA, INC.)**

COMES NOW Plaintiffs, by their attorneys, The Dysart Law Firm, P.C., and for his cause of action against Defendant Shell USA, Inc., Shell Chemical LP (f/k/a Shell Chemical Company), and Shell Oil Products Company, LLC (hereinafter "Shell") (hereinafter in this Count "Defendant Shell") and states:

78. Plaintiffs incorporates by reference all paragraphs of this First Amended Petition as if fully set forth herein.

79. At all times relevant herein, Defendant Shell had a duty to exercise reasonable care and caution for the safety of Mr. Hayden and others working with and around their benzene and/or benzene-containing products.

80. At all times relevant herein, Defendant Shell supplied the benzene, materials and/or products to the worksite where Mr. Hayden and others would be potentially exposed to their products.

Electronically Filed - CITY OF ST. LOUIS - November 03, 2023 - 03:34 PM

81. At all times relevant herein, Mr. Hayden employed or used the products provided by Defendant Shell in the manner and for the purposes for which they were reasonably expected and in the way that Shell should expect.

82. The benzene and/or benzene containing products had a particular defect or hazard when put to the reasonably expected use in that the products have a toxic, poisonous and highly deleterious effect upon the health of persons inhaling, ingesting, or otherwise absorbing them.

83. Defendant Shell had no reason to believe that the user would realize the danger posed by the product's defect or hazard and in fact failed to adequately warn users, including Plaintiff, of the danger.

84. Defendant Shell knew or should have known that the benzene contained in their benzene, materials, and/or products had a toxic, poisonous, and highly deleterious effect upon the health of persons inhaling, ingesting, or otherwise absorbing it.

85. Defendant Shell breached their duty to Mr. Hayden in that they failed to warn him of the dangers of benzene and benzene-containing products.

86. Defendant Shell covered up and hid the dangers of their benzene containing products, including the cancer-causing properties of the benzene in its products, including low level benzene exposure, and that their benzene containing products could cause or contribute to cause cancer, and/or cause or contribute to cause Acute Myeloid Leukemia.

87. As a direct and proximate result occasioned by Shell's failure to warn Plaintiff of the dangers of defendants' benzene, materials and/or products, Mr. Hayden was exposed to and inhaled, ingested or otherwise absorbed benzene in sufficient amounts to cause disease and/or other harm.

Electronically Filed - CITY OF ST. LOUIS - November 03, 2023 - 03:34 PM

88. As a direct and proximate result of said exposure, inhalation, ingestion and/or absorption, Mr. Hayden developed Acute Myeloid Leukemia.  Mr. Hayden was compelled to expend and became liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of his benzene related disease and conditions and to alleviate the pain, suffering, and physical disability caused by his injury; he experienced great physical pain and as a result of said exposure, inhalation, ingestion, and absorption.  Mr. Hayden was also hindered and prevented from pursuing his normal course of employment, thereby losing large sums of money which otherwise would have accrued to him.

WHEREFORE, Plaintiffs pray this Court to enter judgment in his favor and against Defendant Shell, to award compensatory damages in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000), and costs incurred prosecuting this matter, and to grant such other and further relief as this Court deems just and proper.

## COUNT VII
## CONSORTIUM

COMES NOW the Plaintiff, Mrs. Hayden, by her attorneys, The Dysart Law Firm, P.C., and for her cause of action against Defendants, states:

89. Plaintiff incorporates by reference all paragraphs of this First Amended Petition as if fully set forth herein.

90. As a result of the injuries sustained by Plaintiff, Mr. Hayden, as described above, Plaintiff Mrs. Hayden, has suffered a loss of services, society, consortium, and companionship arising out of their marital relationship.

WHEREFORE, Plaintiffs pray this Court to enter judgment in their favor and against these Defendants, jointly and severally, to award compensatory damages in excess of TWENTY-

Electronically Filed - CITY OF ST. LOUIS - November 03, 2023 - 03:34 PM

FIVE THOUSAND DOLLARS ($25,000) and costs incurred prosecuting this matter, and to grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

**THE DYSART LAW FIRM, P.C.**

*/s/ Christopher W. Dysart*
Christopher W. Dysart, #37069
16020 Swingley Ridge Rd., Ste. 340
Chesterfield, Missouri 63017
Phone: (314) 548-6298
Fax:    (314) 548-6230
cdysart@dysart-law.com

***ATTORNEY FOR PLAINTIFFS***

Dated: 11/03/2023