UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THOMAS HAYDEN and <br> WANDA HAYDEN, <br> <br> Plaintiffs, <br> <br> v. <br> <br> MONSANTO COMPANY et al., <br> <br> Defendants. | ) <br> ) <br> ) <br> ) <br> )  Case No. 4:23-cv-01542-SRC <br> ) <br> ) <br> ) <br> ) <br> ) |

## Memorandum and Order

Thomas Hayden and his wife sued five corporate defendants in Missouri state court, alleging that over three decades ago, they tortiously exposed Hayden to dangerous benzene, eventually causing him cancer. Four of those defendants, two of which are Missouri citizens, jointly removed the case to this Court, arguing that despite the forum-defendant rule, removal was lawful because Plaintiffs had fraudulently joined the two Missouri-citizen defendants to defeat removal jurisdiction. Plaintiffs move for a remand to state court, insisting that they brought legitimate claims against the Missouri-citizen defendants. The Court agrees with Plaintiffs that the forum-defendant rule applies and that the fraudulent-joinder exception does not. Accordingly, the Court grants Plaintiffs' motion and remands this case to Missouri state court.

**I.    Background**

The parties do not dispute the underlying facts relevant to issue of remand, *compare* docs. 1, 43 *with* docs. 11, 40, and for purposes of the pending remand motion, the Court accepts the following allegations as true.

Plaintiff Thomas Hayden is currently a citizen of Idaho. Doc. 18. But decades ago, Hayden lived in St. Louis, Missouri, where he worked for Manufacturers Railway Company. Doc. 11 at ¶ 15. In the course of his work from 1966 to 1989, he frequented the J.F. Queeny chemical plant, where he moved rail cars around a rail yard. *Id.* at ¶ 16. There, overhead pipelines carrying benzene or benzene products dripped onto him below, and loosely secured chemical railcars splashed their contents as he worked. *Id.* Decades later, due to that exposure to benzene, Hayden developed Acute Myeloid Leukemia, a form of cancer. *Id.* at ¶ 18.

At the time, Defendant Pharmacia LLC, then known as Monsanto Company, owned and operated the Queeny Plant. Doc. 1-8 at ¶¶ 4, 7. But in 1997, the company spun off its chemical business into a new, independent company named Solutia Inc. *Id.* at ¶ 5. A distribution agreement, which refers to the new company throughout as "Chemicals," outlined the terms of Solutia's creation. *Id.*; *see* doc. 40-1 at 4.[1] The agreement provided that Solutia would become the owner and operator of Pharmacia's chemical plants, doc. 1-8 at ¶ 5, and "retain or assume, as the case may be, . . . all Chemicals Liabilities," doc. 40-1 at 23; *see also id.* at 10 (defining "Chemicals Liabilities" to include liabilities arising from assets transferred to Solutia "whether incurred or arising prior to or after the Distribution Date"); doc. 40-3 at 3 (outlining the "assignment and assumption agreement" by which Solutia received the chemicals-business assets and assumed its liabilities).

Six years later, Solutia filed for Chapter 11 bankruptcy, and in 2007, a federal bankruptcy court confirmed Solutia's Fifth Amended Bankruptcy Plan. Doc. 1-9 at ¶ 5. The Plan provides that "subject to any rights under the Plan, . . . [no] Person or Entity shall be entitled to assert any claim . . . against [Solutia] . . . with respect to any debts, liabilities, guarantees, assurances,

---

[1] The Court refers to page numbers as assigned by CM/ECF.

2

commitments or obligations assumed by Solutia under the [1997] Distribution Agreement." Doc. 40-10 at 112–13.  The Plan also specifies, however, that "[t]he Tort Claims shall be unaffected by the Chapter 11 Cases, this Plan or the Plan Documents.  After the Effective Date, the Tort Claims shall be resolved pursuant to applicable law and in the ordinary course of business."  *Id.* at 106.  Per the Plan, "Tort Claims" includes "all Claims, whether currently asserted or asserted in the future, whether known or unknown, arising under tort law for personal injury or property damage arising from exposure to chemicals or other substances regardless of whether . . . the alleged exposure occurred before or after the Spinoff."  *Id.* at 97.  (The "Spinoff," in turn, means "the transaction contemplated by the Distribution Agreement, whereby Pharmacia spun-off its Chemicals Assets and Chemicals Liabilities to Solutia."  *Id.*)  The Plan goes on to reiterate that "the Holders of Tort Claims shall not be deemed to release [Solutia] . . . on account of any liability arising from or related to the Tort Claims."  *Id.* at 140.  Attached to the Plan was a Settlement Agreement between Solutia and Monsanto Company (not to be confused with Pharmacia), doc. 40-9, by which Solutia and Monsanto agreed to indemnify one another against certain claims including tort claims.  *See id.* at 31–32; *see, e.g.,* doc. 40-10 at 19, 113 (incorporating the Settlement Agreement into the Plan).

In the wake of his cancer diagnosis, Hayden sued five defendants in the Circuit Court for the City of St. Louis, Missouri, bringing claims for premises liability against Monsanto, Solutia, Pharmacia, and Eastman Chemical Company, doc. 11 at 7; negligence against Monsanto, Solutia, Pharmacia, Eastman Chemical, and Shell USA, Inc., *id.* at 10, 14; strict liability for and negligent failure to warn against Shell, *id.* at 17, 21; and strict liability for a defective product against Shell, *id.* at 19.  His wife Wanda Hayden also sued, claiming loss of consortium against all defendants.  *Id.* at 23.  Eastman Chemical is a Delaware corporation with its principal place of

3

business in Tennessee.  Doc. 2.  Monsanto is a Delaware corporation with its principal place of business in Missouri.  Doc. 3.  Pharmacia is a limited liability company, the sole member of which is Wyeth Holdings LLC, a Maine limited liability company of which the sole member is Anacor Pharmaceuticals, Inc., a Delaware corporation with its principle place of business in New York.  Doc. 4.  Solutia is a Delaware corporation with its principal place of business in Missouri.  Doc. 20.  Shell is a Delaware corporation with its principal place of business in Texas.  Doc. 44.

Monsanto, Solutia, Eastman, and Pharmacia timely removed the case from the Missouri state court to this Court.  Doc. 1.  In their notice of removal, they impliedly acknowledged that the forum-defendant rule typically precludes removal by any defendant when even one co-defendant is a citizen of the forum state, as Monsanto and Solutia are here.  *See id.* at 3–8.  They argued, however, that Plaintiffs fraudulently joined Monsanto and Solutia as defendants to defeat this Court's removal jurisdiction, and that the Court should therefore disregard their citizenship when evaluating whether removal is appropriate.  *Id.*  Plaintiffs now move the Court to remand this case to state court, pointing to the Missouri citizenship of Monsanto and Solutia, relying on the forum-defendant rule, and arguing that they have brought legitimate claims against both Monsanto and Solutia.  Doc. 40.

**II.     Standard**

A defendant may remove to federal court any state court civil action over which the federal court could exercise original jurisdiction.  28 U.S.C. § 1441(a).  But the forum-defendant rule makes an important exception:  "[a] civil action otherwise removable solely on the basis of [diversity] jurisdiction . . . may not be removed if any of the . . . defendants is a citizen of the State in which such action is brought."  § 1441(b)(2).  Still, a plaintiff cannot use the forum-defendant rule to "defeat a defendant's 'right of removal' by fraudulently joining a defendant

4

who has 'no real connection with the controversy.'" *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 976 (8th Cir. 2011) (citing *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152 (1914)). To prove fraudulent joinder, a defendant must show the plaintiff's claim against the relevant defendant has "no reasonable basis in fact and law." *Id.* at 977 (quoting *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003)). In other words, "if it is *clear* under governing state law that the complaint does not state a cause of action against the [relevant] defendant, the joinder is fraudulent." *Id.* at 980 (quoting *Filla*, 336 F.3d at 810) (emphasis in original).

On the other hand, "joinder is not fraudulent where 'there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved.'" *Id.* (quoting *Filla*, 336 F.3d at 811). And this standard "require[s] the defendant to do more than merely prove that the plaintiff's claim should be dismissed pursuant to a Rule 12(b)(6) motion." *Id*. (citation omitted). "If there is a 'colorable' cause of action—that is, if the state law *might* impose liability on the resident defendant under the facts alleged—then there is no fraudulent joinder." *Filla*, 336 F.3d at 810 (emphasis in original) (citation omitted). The Court resolves all facts and ambiguities in the plaintiff's favor, and if the sufficiency of the complaint is questionable, the "better practice" is to remand the case and leave the question for the state court. *Id.* at 811 (citations omitted).

## III.  Discussion

The forum-defendant rule provides that in diversity cases, if any state-court defendant is a citizen of the forum state, then no defendant may remove the case to federal court. § 1441(b)(2). Here, plaintiff has brought only state-law claims in Missouri state court, *see* doc. 11, and the removing defendants allege that this Court has jurisdiction only by way of its diversity jurisdiction, *see* doc. 1. Accordingly, for the removing defendants to keep the case in federal

5

court, they must demonstrate compliance with the forum-defendant rule. That effort faces two straightforward hurdles: Monsanto and Solutia are each citizens of Missouri, the forum state. *See* docs. 3, 20.

Enter the fraudulent-joinder doctrine, which prevents a plaintiff from "defeat[ing] a defendant's 'right of removal' by fraudulently joining a defendant who has 'no real connection with the controversy.'" *Knudson*, 634 F.3d at 976 (quoting *Cockrell*, 232 U.S. at 152). In their notice of removal, the removing defendants insist that Plaintiffs have done just that: joining Monsanto and Solutia as defendants in this suit "only to defeat diversity jurisdiction." Doc. 1 at ¶ 25. Monsanto did not exist until 2000, they argue, and "never owned, operated, or controlled the John F. Queeny plant." *Id.* at ¶ 23; *see also id.* at ¶ 31. "Similarly, Solutia did not own, operate, or control the Queeny plant prior to 1997." *Id.* at ¶ 24; *see also id.* at ¶ 32. Accordingly, "Plaintiffs have no reasonable basis for recovery" from those defendants, rendering them "fraudulently joined." *Id.* at ¶¶ 33–34.

But Plaintiffs do not dispute either of those dates, nor argue that Monsanto or Solutia owned, operated, or controlled the Queeny Plant between 1966 at 1989. *See* docs. 40–41. Instead, their motion for remand argues that Monsanto and Solutia assumed liability for the tortious conduct they allege Thomas Hayden suffered at the plant. Doc. 40 at 2–3. Though both parties address Monsanto and Solutia together, *see* docs. 40–41, 43, 48, the Court notes that under the forum-defendant rule, Plaintiffs only need to have properly joined one of those two companies for the rule to apply and compel a remand to state court, *see* § 1441(b)(2). Accordingly, the Court begins by addressing only whether Plaintiffs have fraudulently joined Solutia in this case.

6

On that front, significant agreement exists between the parties. The 1997 distribution agreement by which Pharmacia created Solutia explicitly provides that Solutia would "retain or assume . . . all Chemicals Liabilities," doc. 40-1 at 23, and defined "Chemicals Liabilities" to include liabilities arising from assets transferred to Solutia "whether incurred or arising prior to or after the Distribution Date," *id.* at 10. The "Assignment and Assumption Agreement," which accompanies the distribution agreement, likewise explains:

> WHEREAS, pursuant to the Distribution Agreement, Monsanto wishes to transfer to [Solutia] all of the right, title and interest . . . in the Chemicals Assets, subject to the assumption by [Solutia] of the Chemicals Liabilities (as such terms are defined in the Distribution Agreement) . . .
>
> 1. [Pharmacia] hereby sells, assigns, and conveys onto [Solutia] all of the right, title and interest . . . to all of the Chemicals Assets . . . .
>
> 2. [Solutia] hereby assumes and agrees to pay, perform and discharge all of the Chemicals Liabilities.

Doc. 40-3 at 3. That language is clear: despite Solutia's coming into existence in 1997, it assumed all liability arising from newly-bestowed assets—like the Queeny Plant—even if that liability pre-dated Solutia's existence. Plaintiffs point to this language to support their arguments in favor of remand, *see* doc. 40 at 3–4, and the removing defendants agree as to its meaning, doc. 43 at 7 n.5. "Solutia has never argued," Defendants concede, "that it did not assume the Chemical Liabilities from Pharmacia under the Distribution Agreement." *Id.*

But they insist that after Solutia's bankruptcy, the resulting Bankruptcy Plan and incorporated Settlement Agreement now "control Solutia's liability and bar Plaintiffs from asserting direct premises liability claims against Solutia." *Id.* at 7. And Plaintiffs agree that the language of the Plan governs whether Solutia, rather than the other co-defendants in this case, are liable for Hayden's injuries. *See* doc. 40 at 7–11; *see also In re: Dial Bus. Forms, Inc.*, 341 F.3d 738, 743 (8th Cir. 2003) ("Once confirmed, a Chapter 11 plan acts like a contract that binds

7

the parties that participate in the plan" (citation and internal quotation marks omitted)).  The parties disagree, however, as to the meaning of the terms of the Plan.  The removing defendants rest on broad language in the Plan providing that "subject to any rights under the Plan, . . . [no] Person or Entity shall be entitled to assert any claim . . . against [Solutia] . . . with respect to any debts, liabilities, guarantees, assurances, commitments or obligations assumed by Solutia under the [1997] Distribution Agreement."  Doc. 40-10 at 112–13.  That language, they argue, "reallocated" Solutia's liabilities such that Solutia was no longer directly liable for any claims for which it may have been liable under the distribution agreement.  *See* doc. 43 at 7 & n.5.

But both parties agree that specific contractual language controls the general.  *See id.* at 7 n.6; doc. 48 at 7.  And here, the Plan itself requires that the reader construe its terms in accordance with New York state law, doc. 40-10 at 66, 150, which abides by that maxim, *see Huen New York, Inc. v. Bd. of Educ. Clinton Cent. Sch. Dist.*, 890 N.Y.S.2d 748, 749 (N.Y. App. Div. 2009) ("it is a well-established principle of contract interpretation that specific provisions concerning an issue are controlling over general provisions" (citation omitted)).  Accordingly, to the extent that the Plan contains more specific language governing Plaintiffs' claims, that language controls over the broader prohibition to which the removing defendants point.  To that end, the Plan contains specific language that, despite the broader prohibition on parties bringing claims against Solutia under the distribution agreement, permits parties to bring claims about tortious conduct relating to the assets Solutia acquired at its creation.  It explains that "[t]he Tort Claims shall be unaffected by the Chapter 11 Cases, this Plan or the Plan Documents.  After the Effective Date, the Tort Claims shall be resolved pursuant to applicable law and in the ordinary course of business."  Doc. 40-10 at 106.  It further defines "Tort Claims" as "all Claims, whether currently asserted or asserted in the future, whether known or unknown, arising under tort law

8

for personal injury or property damage arising from exposure to chemicals or other substances regardless of whether . . . the alleged exposure occurred before or after the Spinoff." *Id.* at 97. The Plan also later provides that under its terms, "the Holders of Tort Claims shall not be deemed to release [Solutia] . . . on account of any liability arising from or related to the Tort Claims." *Id.* at 140.

Thomas Hayden brings only tort claims against Solutia in this case. *See* doc. 11 at 7–14. Those claims turn on personal injury he alleges he suffered as a result of his exposure to dangerous chemicals during his employ at the Queeny plant. *Id.* And the removing defendants do not explain how one might read the tort-specific language in the Plan to definitively shield Solutia from direct liability. *See* doc. 43. Accordingly, the Court concludes that, under the specific language of Solutia's Reorganization Plan cited above, Solutia likely remains liable to suit for Hayden's injury. That conclusion suffices to clear the low bar set by the law of fraudulent joinder in this circuit, whereby even "if the state law *might* impose liability on the resident defendant under the facts alleged . . . there is no fraudulent joinder," *Filla*, 336 F.3d at 810 (emphasis in original), and even questionable cases are best left to the state court, *id.* (citation omitted).

This is not the first time the federal courts have reached this conclusion. In *Town of Lexington v. Pharmacia Corp.*, No. 12-cv-11645, 2015 WL 1321457 (D. Mass. Mar. 24, 2015), the court—albeit in the summary-judgment context—held that for torts cases, "[t]he liability assumed by Solutia in the Distribution Agreement was unaltered by its 2007 reorganization." *Id.* at *5. Citing the same language to which this Court cites above, the *Town of Lexington* court held that "although the Distribution Agreement was superseded by the Plan Documents, including the Settlement Agreement, Solutia retained the liability is assumed by virtue of the

9

Distribution Agreement . . . . Solutia assumed direct liability and, therefore, [the plaintiff] may assert its claims directly against Solutia." *Id.* The following year, this very Court—this time in the fraudulent-joinder context—agreed: "With respect to Solutia, the Court concludes, as did the *Town of Lexington* court, that although the Distribution Agreement was superseded by the Settlement Agreement and the Reorganization Plan, Solutia retained the [tort] liability it assumed by virtue of the Distribution Agreement." *Bailey v. Monsanto Co.*, 176 F. Supp. 3d 853, 867 (E.D. Mo. 2016).

The removing defendants protest that those two decisions are not binding on this Court, doc. 43 at 6 n.3; that they "fail to comprehend . . . that Solutia's responsibility for claims such as those asserted by Plaintiffs was altered as a result of its bankruptcy, with the 2007 Settlement Agreement and the Plan now controlling what claims can . . . be asserted against it," *id.* at 6; and that they "failed to follow the maxim that the specific controls the general," *id.* at 7 (citation and internal quotation marks omitted). But none of those arguments are persuasive. This Court agrees with those prior decisions on the merits of its own analysis, not as a matter of precedent. Those decisions relied on language in the very same Settlement Agreement and Bankruptcy Plan that the removing defendants insist must control. *See Town of Lexington*, 2015 WL 1321457, at *5; *Bailey*, 176 F. Supp. 3d at 866–67. And they each relied on the language specific to tort claims rather than the broader prohibition on claims generally brought against Solutia pursuant to the 1997 distribution agreement. *See Town of Lexington*, 2015 WL 1321457, at *5; *Bailey*, 176 F. Supp. 3d at 866–67.

Accordingly, the Court joins its two fellow courts in holding that Solutia is at least likely still directly liable for the kinds of tort claims Thomas Hayden has asserted here. Consequently,

the fraudulent-joinder doctrine does not apply, *Knudson*, 634 F.3d at 976–80; the forum-defendant rule remains in effect, § 1441(b)(2); and the Court must remand this case.

IV.     **Conclusion**

For the reasons discussed above, the Court finds that Plaintiffs have not fraudulently joined Solutia in this case. Because Solutia is a citizen of Missouri, the forum state, the forum-defendant rule bars removal, *see* § 1441(b)(2), and the Court need not reach the question of whether Plaintiffs have fraudulently joined Monsanto, too. Accordingly, the Court grants Plaintiffs' [40] Motion to Remand. Pursuant to § 1447(c), the Court remands this case to the Circuit Court for the City of St. Louis, Missouri, and directs the Clerk of Court to mail a certified copy of this order of remand to the clerk of the state court. The Court also denies Eastman Chemical's [23] Motion to Dismiss as moot. A separate order of remand accompanies this memorandum and order.

So ordered this 25th day of March 2024.

*SL R. CR*

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE